### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | | |
|---|---|---|
| Francesco Angiulo, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21 C 50391 |
| | ) | |
| v. | ) | |
| | ) | Hon. Philip G. Reinhard |
| Deputy Timothy Creighton, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER

Defendants' motion to dismiss [26] is denied. The parties should continue with discovery under the supervision of Magistrate Judge Jensen.

### STATEMENT-OPINION

This is a § 1983 Fourth Amendment case where it is alleged that four McHenry County police officers illegally entered plaintiff Francesco Angiulo's home and threatened to take his daughter, who was the subject of a custody dispute. The total encounter was relatively brief. At this stage of the litigation, the only source for what happened is the amended complaint. The following summary is based on that document.

Plaintiff and the mother of his daughter were "having legal battles over the visitation and custody of their child." At around 10:00 a.m. on March 16, 2021, the four officers (Timothy Creighton, Patrick Dillon, Derrick Waters, and Paul Hildreth) came to plaintiff's home in Woodstock, Illinois. The officers were wearing tactical gear. Specifically, officer Creighton had flash grenades displayed on his chest and the other officers had zip ties. Plaintiff was there with his minor children and girlfriend.

The officers "banged against the door, demanded entry, and announced they were with DCFS to take Plaintiff's daughter pursuant to a Florida order." However, no one from DCFS was present, and the order the officers claimed to be enforcing "had not been properly registered in Illinois." The officers told plaintiff they would enter the home "whether [he] consented or not." The officers did not have a warrant, nor were there any exigent circumstances to justify the entry into the home. Officer Dillon stuck his foot "against the front door, so as to keep it open," and then all four officers "filed into" the home. In his amended complaint, plaintiff added a number of new details and facts that were not included in his original complaint. One key new allegation is that officer Creighton took his firearm out his holster and displayed it across his chest, between the hanging flash grenades, throughout the entire encounter.

Once inside the home, the officers "were adamant" about taking plaintiff's daughter and leaned toward her when she was "within their reach." Plaintiff further alleges the following specifically about officer Creighton:

[His] body language was intimidating, voice elevated, cadence agitated, and voice inflection aggressive, physically placing his body near Plaintiff, with his firearm displayed across his sternum and between the flash bang grenades. He was frothing at the mouth, sweating, and wide-eyed.

¶ 27. Even though plaintiff felt threatened and intimidated by this show of force, he refused to turn over his daughter, who ran to him because she was afraid of the officers. Plaintiff called his attorney and put the attorney on speakerphone so the officers could hear. Upon hearing the attorney, the officers then "quickly" and "hastily" left the home.

On October 12, 2021, plaintiff filed his original complaint. Defendants then filed a motion to dismiss and a supporting memorandum [16, 17]. Magistrate Judge Jensen entered an order giving plaintiff the option of filing an amended complaint or briefing the original motion to dismiss. Plaintiff chose the former option by filing an amended complaint asserting four claims: a §1983 excessive force claim under the Fourth Amendment (Count I); a § 1983 unlawful entry and search claim under the Fourth Amendment (Count II); a state law claim for intentional infliction of emotional distress (Count III); and a claim for indemnification pursuant to 74 ILCS 10/9-102 (Count IV). The defendants in this complaint are the four police officers, as well as McHenry Country Sheriff Bill Prim who is named as a defendant for the indemnification claim in Count IV. Defendants then filed a new motion to dismiss, which has been fully briefed.

## ANALYSIS

Defendants are seeking dismissal of all four counts. In considering a Rule 12(b)(6) motion to dismiss, courts must "accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor." *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021).

The court first considers defendants' general argument that one allegation—described by them as a "crucial allegation"—should be stricken from the amended complaint. This is the allegation described above—namely, that officer Creighton displayed his firearm across his chest during the encounter. *See* ¶¶ 22, 27, 36. Defendants argue that this is a sham allegation added to keep the count from being dismissed. They argue: "In an excessive force case, it is hard to imagine how a plaintiff or his attorney would omit inclusion of the display of a firearm and instead rely merely on the allegation that the defendant was wearing flash grenades in the original complaint." [27 at p. 3.] Citing to Rule 11, defendants argue that no reasonable attorney would have omitted this allegation from the original complaint. Plaintiff responds that the addition of new facts in an amended complaint is a standard procedure and further asserts that it would not be unusual for a person undergoing a traumatic encounter to have an imperfect memory initially and then recall additional details later.

After considering these arguments, the court is not persuaded that this allegation should be stricken as a sham pleading. "[G]enerally, an amended complaint supersedes the prior pleading and will not be dismissed based on inconsistencies between it and the original." *Nance v.*

*NBCUniversal Media, LLC*, 2018 WL 1762440, at *5 (N.D. Ill. Apr. 12, 2018) (internal citations omitted). However, "where the amended allegations *flatly contradict* the originals and there is no suggestion that the originals were made in error, courts have considered the different complaints together in the interests of justice." *Id*. (emphasis added). At this early stage in the litigation, the court cannot reach a firm conclusion that the new allegation flatly contradicts any of the previous allegations. Therefore, the court is unwilling to strike this allegation. The discovery process can be used to test its validity.

The court next turns to the first three counts.[1] The parties start with, and spend most of their time on, the excessive force claim in Count I. The court finds that it makes more sense to begin with Count II because it is easier to resolve and is arguably the first phase in the chronological sequence of events. Count II is labelled as an "unlawful search/entry" claim under the Fourth Amendment. Plaintiff argues that this claim easily survives dismissal based on *Leaf v. Shelnutt,* 400 F.3d 1070 (7th Cir.2005). In *Leaf*, the Seventh Circuit noted that "[a] warrantless entry into a private home constitutes a search and presumptively is unreasonable under the Fourth Amendment." *Id.* at 1081 (citing to a line of Supreme Court and Seventh Circuit cases). However, such a search is permitted if there are exigent circumstances. *Id.* Applying this straightforward rule here, plaintiff argues that the officers entered his home without a warrant and without any exigent circumstances. Therefore, these alleged actions were presumptively unreasonable. The court finds this argument persuasive. In defendants' reply, they did not discuss *Leaf*, nor identify any other Seventh Circuit case suggesting that plaintiff's analysis is incorrect. Instead, they re-package their excessive force argument (discussed below) that no force was used at all or that the overall force was not excessive. But defendants have not offered any authority to support their implied argument that police officers are permitted to enter anyone's home as long as the officers use a modest or non-excessive amount of force. As noted above, plaintiff has alleged that *some* force was used when officer Dillon stuck his foot in the door. Defendants appear to be hinting at a consent defense, although they do not directly make such an argument. Perhaps such an argument can be developed through discovery, but it is not a viable now because plaintiff has explicitly alleged that the officers entered his home without his consent. *See* ¶ 16. For these reasons, the request to dismiss Count II is denied.[2]

Given that this case will go forward with discovery, this fact adds another reason to be cautious in dismissing the remaining counts, which all arise out of the same underlying encounter. In any event, the court is not persuaded that dismissal of the two remaining counts is warranted.

---

[1] Count IV is a claim for indemnification, and defendants agree that it should only be dismissed if the first three counts are dismissed.

[2] Defendants also point out that plaintiff has not alleged that any of the four officers, once they were inside the home, conducted an additional search throughout the house. It appears true that plaintiff has not made any explicit allegation to this effect. The parties need to conduct discovery to develop the record further on this and other aspects of the encounter once the officer were inside the home.

3

Defendants' argument for dismissing the excessive force claim in Count I is not easy to follow in all respects, as both the legal framework and the facts about what happened are not fully developed. Defendants do not start their analysis with *Graham v. Connor*, 490 U.S. 386 (1989), which sets forth a multi-factor test that courts typically use when evaluating these types of claims. In a recent case, the Seventh Circuit set forth the following helpful overview:

> The Fourth Amendment grants that the "right of the people to be secure in their persons, . . . against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Although police officers may use force to seize another person under appropriate circumstances, the Fourth Amendment protects against the use of excessive force. *Weinmann v. McClone*, 787 F.3d 444, 448 (7th Cir. 2015). "The question whether a particular use of force has crossed the constitutional line is governed by the Fourth Amendment, which prohibits unreasonable seizures." *Id.* at 448 (citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). We analyze excessive force cases under an objective reasonableness standard. *Graham*, 490 U.S. at 388, 109 S.Ct. 1865. This analysis "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396, 109 S.Ct. 1865 (internal quotations omitted). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397, 109 S.Ct. 1865. "Such an analysis is inherently fact-dependent, requiring consideration of such factors as the severity of the crime at issue, whether the person posed an immediate threat to the safety of the officers or others, and whether the person was actively resisting the officers." *Williams v. Ind. State Police Dep't*, 797 F.3d 468, 472–73 (7th Cir. 2015) (citing *Graham*, 490 U.S. at 396, 109 S.Ct. 1865).

*Taylor v. City of Mitford*, 10 F.4th 800, 806-07 (7th Cir. 2021) (reversing the grant of summary judgment to the defendants).

Instead of analyzing these *Graham* factors, defendants base their argument largely on *McNair v. Coffey*, 279 F.3d 463 (7th Cir. 2002). *McNair* is a procedurally complicated case, in which plaintiffs won a jury verdict on their excessive force claim but then that verdict was ultimately set aside, based on the doctrine of qualified immunity, after two decisions from the Seventh Circuit and one from the U.S. Supreme Court. But the underlying facts are somewhat easier to summarize.[3] The plaintiffs, two brothers, were driving to church one evening when the defendant officer decided to pull their car over because of unpaid parking fines. The officer put on

---

[3] The Seventh Circuit issued two decisions in the case. The 2002 decision cited above and then a decision in 2000—*McNair v. Coffey*, 234 F.3d 352 (7th Cir. 2000). The summary of the underlying facts is taken from both decisions.

his lights to signal for them to stop and also called for backup. The plaintiffs did not pull over right away, allegedly because they were concerned about being in a rough neighborhood. Eventually, a mile later, they pulled over in a gas station. Meanwhile, seven police cars had arrived at the scene in response to the officer's backup request. As plaintiffs were getting out of the car, the defendant officer and then four other officers pointed their guns at plaintiffs. The incident ended peacefully an hour later. The Seventh Circuit ultimately held that the officer was entitled to qualified immunity. The court explained as follows:

> Viewing matters through the objective reasonableness standard, we conclude that, even taking the record in the light most favorable to the McNairs, a jury could not properly have found that Officer Coffey *personally* behaved unreasonably. Good practice may have called for sending fewer cars, the better to maintain patrol coverage throughout the jurisdiction, and good community relations may counsel leaving revolvers in their holsters unless necessary. But the Constitution does not displace state and local governments as the source of wise police practices, and it certainly does not fasten liability on individual officers who call for aid whenever too many colleagues respond. Just as police may order occupants out of their vehicles to promote safety in a traffic stop, see *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); *Maryland v. Wilson,* 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997), and may take suspects into custody for trivial offenses, see *Atwater,* so they may call extra cars to the scene to ensure that violence does not erupt—especially after a suspect in a rough neighborhood refuses to stop when directed. Plaintiffs have not cited even one post-*Graham* decision holding that an excessive number of squad cars or drawn guns can violate the fourth amendment by giving fright or offense, if the seizure is supported by probable cause and otherwise reasonable.

*McNair II*, 279 F.3d at 467 (emphasis in original).

Defendants argue that the present case is like *McNair*, except that the facts are even less compelling because only one of them even displayed a gun and that officer never pointed it directly at plaintiff or his children. Defendants frame the relevant legal question in narrow terms. According to their view, the question is whether they could be found liable under an excessive force theory if they merely wore tactical gear without ever using that gear against plaintiff, and without otherwise physically touching him. Defendants then argue that the answer to this question should be no, as a matter of law. They raise slippery slope concerns: "Every traffic stop, service of a subpoena or other legal process, or response to a complaint of a barking dog or loud music would, if plaintiff's theory were correct, constitute an unconstitutional use of excessive force." [27 at p. 6.] In sum, relying on *McNair,* as well as several district court cases, defendants are basically trying to pigeonhole plaintiff's excessive force claim as being, at best, a "mere gun pointing" case. They suggest that there is essentially a bright-line rule that no police officer can be found liable for merely displaying a gun but never verbally threatening to use it.

5

The court is not persuaded by this argument for several reasons. *McNair* was not a motion to dismiss case. Unlike here, the facts had been developed through discovery and then at trial. The Seventh Circuit did not set forth any absolute rules, and specifically acknowledged that "a seizure reasonable at the outset may become 'unreasonable' because [it was] *implemented in a needlessly frightening manner*." 279 F.3d at 466 (emphasis added). In that case, aside from pointing a gun at plaintiffs, the defendant officer was, as the Seventh Circuit noted, "otherwise reasonable" in his actions during the encounter. Here, as discussed further below, plaintiff has alleged that the case is more than just a "gun pointing" case. Moreover, in subsequent cases, the Seventh Circuit has distinguished *McNair* when the facts differed in certain ways. For example, in *Baird v. Renbarger*, 576 F.3d 340, 346–47 (7th Cir. 2009), the Seventh Circuit considered a case where an officer pointed a submachine gun at several people when attempting to round them up at a workplace setting while executing a search warrant. The Seventh Circuit affirmed the district court's denial of qualified immunity at the summary judgment stage. The Seventh Circuit stated that "gun pointing *when an individual presents no danger* is unreasonable and violates the Fourth Amendment." *Id.* at 345 (emphasis added). The Seventh Circuit distinguished *McNair* by noting that it involved an encounter in a rough neighborhood and the plaintiffs had refused to stop when directed. *Id.* In contrast, in *Baird*, the officers had no report that anyone at the workplace was armed or dangerous. At this point, both sides no doubt could point to facts to distinguish either *McNair* or *Baird* in a way to support their respective positions. But the court finds that it is not worth engaging in further analysis because these two cases were not decided on a motion to dismiss.

The overarching problem with all of defendants' arguments is that they are based on a cramped view of the amended complaint. Defendants ignore contextual facts that plaintiff believes add to the overall sense of intimidation and threat. Plaintiff believes that these facts make this case more than a "mere gun pointing" case. These facts, which of course are merely allegations, include the following: there were four officers; they physically forced their way into plaintiff's home when officer Dillon stuck his foot in the door; they falsely stated that they were from DCFS; they did not verify the Florida court order; they demanded plaintiff's child even though they did not have a right to take the child; they asserted that they would enter the home without plaintiff's consent and ignored his objections; officer Creighton unholstered his firearm even though neither plaintiff nor his children did anything to warrant a concern about safety; they were "leaning in toward the minor child when the child was within their reach"; Creighton was "frothing at the mouth, sweating, and wide-eyed"; his "body language was intimidating, voice elevated, cadence agitated, and voice inflection aggressive"; and the officers were "adamant about taking Plaintiff's child." Significantly, the encounter took place in plaintiff's home, not on a sidewalk or roadside. The case law states that a court should look carefully at the "totality of the circumstances surrounding the encounter." *See Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 592 (7th Cir. 1997). However, defendants' present arguments fail to heed this admonition. This is another reason why it would be premature to end this case before any discovery has taken place. It is better to address these arguments on a motion for summary judgment, if appropriate, when the factual record and the legal framework are more fully developed. The court acknowledges that defendants have also repeated their same arguments under the qualified immunity framework, but the same reasons

6

given above make it difficult to conduct this analysis as well. *See Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019) ("Because a qualified immunity defense so closely depends on the facts of the case, a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds.") (internal citations and quotations omitted).[4]

For these same reasons, the court is also unwilling to dismiss Count III, which is a state law claim for intentional infliction of emotional distress. Both sides agree that the standard a plaintiff must meet to prevail on this type of claim under Illinois law is high, requiring (among other things) conduct that is "truly extreme and outrageous." *See Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017). But here again, defendants' argument rests on the same partial view of the facts that ignores key allegations from the amended complaint. For this reason, the court does not believe that it would be an efficient use of judicial resources to parse through what are essentially hypothetical arguments given the undeveloped record.

For all these reasons, defendants' motion to dismiss is denied.

Date: 4/26/2022                                        ENTER:

*Philip G. Reinhard*

United States District Court Judge

Electronic Notices. (LC)

---

[4] Defendants also argue that the three officers who did not display their weapons should be dismissed because they played a lesser role. This too is an argument that requires a more developed record and can be raised on a motion for summary judgment.